## Jacob Darst, Appellant, *v.* Israel M. Marshall, Appellee.

### APPEAL FROM KNOX.

Where there is a contract for the sale of land unexecuted, it makes no difference so far as claim and color of title is concerned, whether the taxes are paid by the vendor or vendee, or by the assignee of either.

Where a party had a contract for a deed of land, to be delivered when he should make certain payments, the contract providing also, that he should repay the taxes assessed after a certain date, which contract was assigned by the vendor as the payment of money, and the assignee of the contract paid taxes for three years, and until the deed was delivered; when the party purchasing paid those taxes and all others for a period of seven years, during all which time he was in actual possession, this established such claim and color of title as would defeat an action of ejectment brought by any other claimant.

PLAINTIFF filed his declaration for the recovery of the 'north-west quarter of section thirty-two, township ten north, range one east of the fourth principal meridian, at the September term of the Knox Circuit Court, to wit: the 24th day of September, 1855. Plea, not guilty.

The cause was tried by the court, without a jury, at the April term of said court, 1857, and taken under advisement by the court until the October term, 1857, when judgment was rendered for the defendant, at which last named term plaintiff filed his bill of exceptions, which shows that the plaintiff proved title from the United States by a regular chain of conveyances to himself, which were read in evidence, without objection.

The possession of the said premises by defendant at the time of commencing suit was admitted.

Here the plaintiff rested.

Defendant, to prove title on his part, offered in evidence a deed for said premises from the Auditor of State, under a tax sale made 16th January, 1828, dated 5th July, 1830, to John Tilson, Jr., which was offered for the purpose of defense, under the limitation laws, and admitted for that purpose by the court; also a deed from John Tilson, Jr., and wife, to Moses Allen, conveying said premises, dated 27th April, 1830, for the purpose of making defense under the limitation laws. To the admission in evidence of said two last named deeds, the plaintiff objected, which objections were overruled by the court.

Defendant next offered in evidence a deed from Moses Allen and wife, to Chas. F. Moulton and others, dated 14th November, 1835, and a deed from said Moulton and others, to Thomas Dunlap and Lemuel Lamb, dated 30th April, 1838, to the land in question, both of which last named deeds were objected to by plaintiff, and excluded by the court.

Defendant next offered a deed from said Lamb and Dunlap, to himself, for said premises, dated 1st November, 1841, which last named deed was never recorded. Also, a copy of agreement for a deed from the Illinois Land Company to Israel M. Marshall, the defendant, dated 15th June, 1841, whereby said land company bound themselves to convey to said Marshall the land in question, in consideration of the payment by Marshall of $50 cash in hand, $150 on 1st June, 1842, $150 on 1st Monday of June, 1843, and $142 on 1st Monday of June, 1844, with interest. Said agreement contained the following clause by which defendant agreed, " at the time of the delivery of the deed for said premises by the said parties of the first part, to repay to the said parties of the first part all taxes assessed on said premises from the fifteenth day of June, one thousand eight hundred and forty one, and the interest thereon, at the rate of

Darst *v.* Marshall.

six per centum per annum, until paid," upon which agreement were receipts for the purchase money paid by Marshall.

One of which receipts was dated 27th June, 1842, for $19.25, signed "John Tilson, Jr., Agent for C. Morton."

Another for $51.77, dated 28th June, 1841, signed "John Tilson, Jr., Agent for Chas. Morton."

Another for $110, dated 13th July, 1843, signed "Lucius Kingman, for the owner, J. R. Randolph."

Another for $205, dated 3rd July, 1843, signed "Lucius Kingman, for the owner, J. R. Randolph." Which said agreement never was recorded.

Defendant next offered the deposition of Lucius Kingman, dated 14th January, 1857, to which was attached and exhibited said agreement from the land company, and said deed from Lamb and Dunlap, to the defendant, and also three several tax receipts for the payment of the taxes on said land, as follows:

STATE OF ILLINOIS, }                          COLLECTOR'S OFFICE,
KNOX COUNTY.       } ss.               Knoxville, *May 25th,* 1842.

Received of John Tilson, Jr., twelve dollars and seventy-two cents, tax due State and County, for year 1841 on the following lands:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| S. E. 31, | 10 N., | 1 E., | - | - | - | - | - $3 90 |
| N. W. 31, | 9 N., | 3 E., | - | - | - | - | 2 94 |
| N. W. 32, | 10 N., | 1 E., | - | - | - | - | - 2 94 |
| N. E. 18, | 9 N., | 1 E., | - | - | - | - | 2 94 |

                                              $12 72
              Signed,        G. PLYMALE, *Collector.*

STATE OF ILLINOIS, }                          COLLECTOR'S OFFICE,
KNOX COUNTY.       } ss.               Knoxville, *May 22nd,* 1843.

Received of Lucius Kingman, the sum of three dollars and sixty-eight cents, being in full for State, County and Road Tax, on the following described land, for the year 1842:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| N. W. 36, | 10 N., | 3 E., | - | - | - | - | - $1 84 |
| N. W. 32, | 10 N., | 1 E., | - | - | - | - | - 1 84 |

                                              $3 68
                             GEO. LOWMAN, *Collector.*

STATE OF ILLINOIS, }                          COLLECTOR'S OFFICE,
KNOX COUNTY.       } ss.               Knoxville, *Feb.* 22, 1844.

Received of John R. Randolph, the sum of three dollars and five cents, being in full for State and County Tax on the following described land, for the year 1843:

N. W. 32,  10 N.,  1 E., }
N. W. 34,  10 N.,  3 E., }  - - - - -.  $3 05

              Paid by N. SELBY.              $3 05
                             GEO. LOWMAN, *Collector.*

Said Kingman states, the Illinois Land Company owned the land; Lamb and Dunlap were the trustees, and held the title; the company owed John Tilson, Jr., money.

That the contract to Marshall was executed by the Illinois Land Company, by John Tilson, agent for said company, by Chas. Morton.

That in April or May, 1842, said contract and its value was given to John Tilson, Jr., by the Illinois Land Company, instead of money due said Tilson, and the taxes for 1841 were paid in name of said Tilson for himself. John Tilson, Jr., then gave the contract to Robert Tilson, as cash, and Robert gave it to one John R. Randolph, as so much cash; and the taxes of 1842 were paid in the name of Kingman, for said Randolph; and tax of 1843 was paid by witness, in the name of said Randolph for him, and so charged to him on the books.

That said contract, the deed to Marshall, and tax receipts, were all left with witness, in Quincy, by John Tilson, Jr., Robert Tilson, and John R. Randolph: the tax receipts contained other lands than the one in question.

The land in question was sold to defendant as a tax title.

Tilsons and Randolph only claimed the land as above stated, under the title sold by said land company, to Marshall; and they paid the taxes as such owners under said sale and contract, in the place of the land company.

Defendant next offered in evidence tax receipts for the payment of taxes on the land in question, for the years 1844, 1845, 1846, 1847 and 1848; to all of which evidence the plaintiff objected, (but not because signatures were not proved, nor because copies were used,) but because the same were irrelevant and improper evidence; but the court overruled the objections and allowed the evidence to be read for the purpose of showing color of title or connected title to protect the defendant under the limitation laws.

*John C. Latimer* sworn, stated that the land in question was vacant when he first knew it in 1831; in 1833 a man by the name of West cut a set of cabin logs on the land. In 1834, brother of witness bought the logs and West's claim, for defendant.

In 1835, defendant moved from Kentucky on to the land, in his wagon, put up a temporary camp, then put up a cabin with the logs, made arrangements to winter his stock: in winter of 1835 and spring of 1836 he made rails and fenced a small field; has had possession by actual residence thereon ever since, but had only a small part of the quarter inclosed. Broke up four or five acres in 1836, and planted an orchard; has used it as his farm.

He continued his improvements in 1837, the house has been occupied by tenants ever since; these improvements were continued until there is now a pasture fenced of from sixty to eighty acres, besides the orchard. The defendant's barn is on this ground. The whole of the pasture and orchard were inclosed by 1842 or 1843.

Defendant first squatted on the land, and said he intended to buy it as soon as he could find the title; has claimed it as his own since 1840; built a large barn on it in 1841.

That West never lived on the land, nor had any title to it. That defendant came out from Kentcky in 1834, to look at the country, saw this land, said if he could get West's claim, he would settle on it, and buy the title when he could find it. He bought the tax title in 1840; claimed nothing but a squatter's claim when he first went on to the land, and never claimed any title until 1840. Sixty or seventy acres of prairie on the quarter; the balance is brush and timber. Defendant has openly claimed the land as his own since he bought the tax title.

Defendant then offered a deed from Peter Franc, sheriff, to Abraham D. Swartz, under tax sale of 1840, for tax of 1839, dated November 15th, 1842, conveying the land in question. Also, a deed from Abraham D. Swartz and wife, to Charles Morton, dated 27th May, 1842, conveying said land. Also, a deed from Charles Morton and wife, to defendant, dated 15th January, 1845.

To the introduction, in evidence, of said three last deeds, plaintiff objected; the defendant stated that he offered the deeds to show connected title, or color of title, to protect him under the limitation laws of 1835 or 1839, or either of them, for which purpose only the court admitted the same.

It was agreed that no exceptions should be taken to any papers, on account of signatures not being proved, nor because copies were used instead of originals.

*John G. Sanborn* sworn, stated that the receipts for money on the contract were in the handwriting of Charles Morton. Recollects that the papers were left with him (witness), and presumed the deed was delivered by him to Marshall, when the last payment was made, in 1844 or 1845. Can't say that the contract shown is the one left with him, but thinks it is. Had received at various times papers from Land Company, for Marshall. Don't recollect delivering the deed to Marshall. Can't identify the deed as being the one left with him; it resembles the one.

Last payment on contract was made in 1844 or 1845; of this he has no recollection, except from the papers; thinks he

received a small sum of money from Marshall, for Morton, and delivered him the contract and deed ;—this he states from his general recollection of the transaction.

Thinks he delivered a deed to Marshall ; can't say the one shown was the one, but thinks it looks like the same.

The above was all the evidence in the case.

Appellant assigns for error :

That said Circuit Court erred in permitting the said deed from the auditor of said State, to John Tilson, Jr., and from John Tilson, Jr., to Moses Allen, to be read in evidence.

In permitting said deed from Lamb and Dunlap to said defendant, to be read in evidence.

In permitting said contract from the Illinois Land Company to said defendant, to be read in evidence.

In permitting the deposition of Lucius Kingman to be read in evidence.

In permitting so much of said deposition of Kingman to be read as shows, or tends to show, title, or color of title to said premises, in the Illinois Land Company, or in John Tilson, Jr., or John R. Randolph.

In permitting each and every of the said tax receipts attached to the deposition of said Kingman, to be read in evidence.

In permitting parol evidence that the tax of A. D. 1842, paid in the name of Lucius Kingman, was paid for John R. Randolph.

In admitting evidence of the payment of the taxes for the years 1841, 1842 and 1843, and each of them, under any title, or color or claim of title, in the Illinois Land Company.

In admitting the evidence of the payment of taxes as stated in the deposition of said Kingman, under any claim and color of title attempted to be shown in said cause, to entitle the defendant to a defense under the act of A. D. 1839, as a limitation law, or for any other purpose under said act.

In permitting the said tax deed from Peter Franc, sheriff, to Abraham D. Swartz, to be read in evidence.

In permitting said deeds from Swartz to Charles Morton, and from said Morton to the defendant, to be read in evidence.

In rendering judgment in favor of said defendant in said cause.

In determining that said defendant was entitled to the benefit of the limitation act of A. D. 1835, or the act of A. D. 1839, upon the facts shown in said cause.

In not rendering judgment for the plaintiff upon the facts shown in said cause.

H. M. WEAD, J. MANNING, and LANDER & LINDSAY, for Appellant.

G. F. HARDING, for Appellee.

WALKER, J. This was an action of ejectment, commenced in the Knox Circuit Court, by Darst against Marshall, at the September term, 1855. On a trial by the court, by consent, without the intervention of a jury, the plaintiff introduced in evidence a regular chain of title from the United States to himself. Defendant admitted possession. The defendant introduced in evidence a deed from the Auditor of State, under sale of January, 1828, dated July 5th, 1830, to John Tilson, Jr.; a deed from Tilson to Moses Allen; a deed from Allen to Charles F. Moulton and others; a deed from Moulton and others to Lemuel Lamb and Thomas Dunlap, for the premises in dispute. Also, a deed from Lamb and Dunlap to himself, dated the 1st of November, 1841. And a copy of an agreement for a deed from the Illinois Land Company to defendant, dated July 15th, 1841, by which the Land Company bound themselves to convey the land to defendant upon the payment of the purchase money as therein specified; the last payment of which fell due on the 1st day of June, 1844. The defendant agreed by this contract that, upon the delivery of the deed, he would repay all taxes assessed on the land after the 15th of June, 1841, and interest thereon until paid. On the back of this agreement were receipts of purchase money: one for $51.77, June 28, 1841, signed J. Tilson, Jr., for Chas. Morton; one for $19.25, June 27, 1842, signed J. Tilson, Jun., agent for C. Morton; one for $205, July 3, 1843, signed Lucius Kingman, for the owner, J. R. Randolph; and another for $110, the 13th July, 1843, signed, Lucius Kingman, for the owner, J. R. Randolph. The defendant read a tax receipt for this land for the taxes of 1841, paid by J. Tilson, Jr., dated the 25th May, 1842; one for taxes of 1842, paid by Lucius Kingman; one for 1843, paid by John R. Randolph. Kingman testified that Lamb and Dunlap were the trustees for the Illinois Land Company. The Company owed Tilson, and Tilson, as their agent, sold the land to defendant. That in April or May, 1842, the contract was given to Tilson as money, and the taxes of 1841 were paid in his name for himself. He afterwards gave the contract to Robert Tilson as cash, and he in like manner gave it to John R. Randolph as so much cash, and that the taxes of 1842 were paid by Kingman for the use of Randolph; the taxes of 1843 were paid by witness in the name of Randolph, for him, and so charged on the books. The contract, the deed to Marshall, and

16

tax receipts, were all left with witness by John Tilson, Jr., Robert Tilson, and John R. Randolph. The Tilsons and Randolph only claimed the land, as above stated, under the title of the Land Company sold to Marshall, and they paid the taxes as such owners under that sale and contract, in place of the Land Company. Defendant then read in evidence tax receipts to himself for the years 1844, 1845, 1846, 1847, and 1848. The evidence shows that in 1835 defendant went into the actual possession of the land, and had resided on it since that time. That in 1835 he built a cabin, made rails and fenced a small field. In 1836 he broke up four or five acres and planted an orchard, and used the place as his own. He continued the improvements until sixty or eighty acres were inclosed, besides the orchard; has his barn on the land, and the whole inclosure was made as early as in 1842 or 1843. The barn is a large one, and was built in 1841. Defendant then introduced in evidence a deed from Peter Franc, sheriff of Knox county, to Abraham D. Stewarts under tax sale of 1840, for tax of 1839, dated November 15th, 1842, for the land in question. Also, a deed from Stewarts to Charles Morton, dated May 27th, 1842; and a deed from Morton to defendant, dated 15th January, 1845. On this evidence the court found for the defendant, and rendered judgment in his favor. From which plaintiff appeals.

In giving a construction to the 8th sec. of the 24th chap., R. S. 1845, in the case of *Cofield* v. *Furry*, 19 Ill. R. 183, this court say: "The true question in such cases is, under what title were the taxes paid? If they were paid under no claim and color, or under a title adverse to that to which they are sought to be applied, the payment is unavailing. But if paid by the tenant, his payment, like his possession, is, in legal effect, the act of the landlord. If payment is made by the *cestui que trust*, the effect is the same as if made by the trustee, for the two interests united make the estate, or the legal and equitable title to the land, standing together, and not in hostility to each other."

In the case under consideration, the defendant held the actual possession of the premises, under a contract which he entered into with the agent of Lamb and Dunlap, made the 15th of June, 1841. And, whatever the authority of the agent might have been, they executed a deed of this land, in pursuance of this agreement, on the 1st day of November following, which was not delivered until the purchase money was paid. They undoubtedly, by the execution of that deed, fully ratified the act of their agent in this sale. The defendant was, then, in possession under this title, and so continued for some years after his purchase, as also after the ratification of it by Lamb

and Dunlap. This was clearly claim and color of title. The defendant paid the taxes for five years, about which there is no dispute. But it is insisted that the payment by Tilson and by Randolph, and by Kingman for Randolph, for each of the three years which completed the seven years, was not available. The evidence shows that Lamb and Dunlap assigned the contract with defendant to Tilson as a payment of money. He thereby succeeded to all their rights under the contract, and Randolph, by assignment, succeeded to Tilson's rights, in the same manner. And these taxes were paid by them while they held this interest. They paid them under it, and to protect it from sale. They did not pay the taxes claiming under no title, nor did they pay them under a title adverse to this, but as connected with it by their assignment of the contract. It can make no difference whether the taxes are paid by the vendor or by the vendee, while the contract of sale remains unexecuted ; nor can it make any difference whether by the assignee of the vendor or of the vendee ; for, whether paid by one or another of them, it would be equally under the same claim and color of title. Any other construction would defeat the obvious intention of the legislature, and fail to prevent the mischief intended to be remedied.

The contract of defendant for the purchase of this land, provided that he would refund to the persons of whom he purchased, all taxes that should accrue after the purchase and which they should pay. This was, then, an authority to the vendor, or his assigns, to pay the taxes for him. And when they made those payments, they did so as his agents ; and what a person does by another, he does by himself. Upon this principle, the payments thus made are equally availing as the payments made by himself, and formed a part of the seven years' payment of taxes, concurring with his seven years' possession.

*Judgment affirmed.*