Irving *vs.* Brownell.

---

James T. Irving, plaintiff in error, *vs.* Benjamin F. Brownell, defendant in error.

### *Error to Pike.*

An Auditor's deed to land, made in pursuance of a sale for taxes, under the law of 1827, will not show a complete title in a party, without proof that the prerequisites of the law have been complied with.

The words "claim and color of title made in good faith," under the law of 1839, mean such a title as, tested by itself, would appear to be good—a *prima facie* title. Such a title, connected with seven years' actual possession, and payment of taxes, becomes invincible.

To be actual, the possession should be open, visible and exclusive, either by an enclosure, the erection of buildings, or in such manner as to give the real owner notice that the person in possession was claiming the land as his own.

Irving *vs.* Brownell.

If the occupant does not pay the taxes for seven years, but permits the land to be sold for the taxes of one year, and bids it in, it is not a compliance with the law.

An Auditor's deed is a title deducible of record, under the law of 1835, and is sufficient to protect a party who can connect himself with it, and show that he has been possessed of the premises by actual residence, under such title, for seven years.

The word "title," as used in the act of 1835, should not be construed to mean a perfect, but only such a title as is evidenced by a deed in proper form, and duly executed by some one of the officers or persons named in the act.

Courts sitting in a county, will officially take notice who were the justices in such county.

A certificate of acknowledgment made by a commissioner of another state, need not be under seal. A certificate of acknowledgment, if in other respects sufficient, will not be vitiated for want of a date.

This was an action in ejectment, by the plaintiff in error, to recover the north-west quarter of section twenty-eight, in township four, range six, west of the fourth principal meridian, situate in the county of Pike. The action was commenced by service of declaration and notice, on the 18th of January, 1848. The defendant in error filed his plea of not guilty, and a trial was had before Purple, Justice, and a jury, at September term, 1848, and a verdict found for the defendant. A motion for a new trial was denied. The facts of the case will sufficiently appear in the opinion of the Court.

J. GRIMSHAW, for plaintiff in error :

The plaintiff in error, in the Court below, deduced title regularly from the patentee. The defendant in error seeks to defend under acts of January 17, 1835; Real Estate Stat., 424, and act of March 2, 1839; ibid, 427. The law of 1839 was intended to " quiet possession : " it requires, as part of the defence, actual possession. Such possession must be definite, positive, notorious, *a pedis possessio.* Jackson *vs.* Schoonmaker, 2 Johns., 233 ; Jackson *vs.* Halstead, 5 Cowen, 219 ; Kinsell *vs.* Daggett, 2 Fairfield, 314 ; Little *vs.* Libby, 2 Greenleaf, 247 ; Coburn *vs.* Hollis, 3 Metcalf, 128. The possession must be open, visible—an actual occupation, to the exclusion of the true owner. Proprietors of Kennebec *vs.* Call, 1 Mass., 487. Building upon, or putting a fence upon land, held to be adverse possession. They are such acts as constitute notice. Poignard *vs.* Smith, 6 Pickering, 177 ; Alden *vs.* Gilmore, 13 Maine, 182. Occasional cutting of timber on land, or occasional use of it as a sugar camp, do not constitute possession. Broxdall *vs.* Speed, 1 A. K. Marshall, 105 ; Smith *vs.* Mitchell, ibid, 207 ; Wilson *vs.* Stivers, 4 Dana, 635.

Defendant's actual possession did not begin until the spring of 1841. Before that time he was committing mere acts of trespass. The act of 1839 also requires such possession to be with claim and color of title. Color of title must be such as the law would, *prima facie*, consider a good title. Jackson *vs.* Frost, 5 Cowen, 351. Possession for seven years, under invalid tax deed, held to be no protection, under Tennessee limitation law of 1797. Lessee of Powell *vs.* Harman, 2 Peters, 241 ; Walker *vs.* Turner, 5 Cond. U. S., 673. Fencing land and pasturing cows on land, by one claiming under deed of collector of taxes, no evidence being offered of a compliance with the law, held to be mere acts of trespass, as nothing passed by collector's deed. Pray *vs.* Pierce, 7 Mass., 383. The defendant has produced, as evidence of his color, Auditor's deed, sale in 1827, for tax of 1825 and 1826. This deed was inadmissible for any purpose. Garrett *vs.* Wiggins, 1 Scammon, 335; Hill *vs.* Leonard, 4 Scammon, 141 ; Doe *ex dem.* Ewing *vs.* Bean, 1 Gilman, 302.

The doctrine of presumption from long possession is too well established to be questioned at the present day. It is a doctrine founded in justice, intended to support title of *bona fide* holders of land, where, from accident or casualty, their title papers may be supposed to be lost. But to direct a jury to presume a fact, in direct opposition to the evidence produced and relied on by the party, has never been countenanced by any decision we have seen. Had the plaintiff entirely withdrawn this defective deed, and asked the Court to instruct the jury to presume a good deed, from acts of ownership, it would have presented a different question. Every presumption that might have arisen from want or absence of proof is here rebutted and destroyed by proof offered. Beall *vs.* Lynn, 6 Harris and Johns., 351. The act of 1839 further requires payment of taxes during seven successive years, during the occupancy under color of title. The defendant failed utterly to show payment of tax for seven successive years, during time of his possession before 18th January, 1848. His actual possession began in spring of 1841 : his payment of tax can only begin to date from that time. The Court below allowed him to offer in evidence a receipt for the tax of 1839, and a receipt for the tax of 1840 to Phineas Breeze. No connexion of Breeze shown with the defendant. These years are both antecedent to the possession of defendant. The

purchase by defendant of land for taxes of 1844, was no payment by him, but a purchase. The taxes were paid by plaintiff when he redeemed from that sale. The last receipt produced is for 1845. Under no mode of computation, as plaintiff contends, could these papers show payment of tax for seven years, during the time of defendant's possession. Tax paying and possession must be concurrent. The copies of deeds produced, to connect defendant in error with color of title, subsequent to Auditor's deed, is here inadmissible. No proper foundation was laid for introduction of copies. Mariner *vs*. Saunders, 5 Gilman, 125. The copies, when produced, should have shown that the originals were properly executed. One has no county to certificate of acknowledgment; another no date to certificate. The principles governing such testimony are given in Mariner *vs*. Saunders, 5 Gilman, 125; Vance *vs*. Schuyler, 1 Gilman, 164; Pendleton *vs*. Britton, 3 Conn., 412. Defect in certificate cannot be helped by parol. Hayden *vs*. Westcott, 11 Conn., 129. The defendant was bound to connect himself regularly with title offered.

The act of 1835 requires connected title, deducible of record. The title offered was not connected. The Auditor's deed was inadmissible, as the foundation of title deducible of record. This Auditor's deed at the sale in 1827, for taxes of 1825 and 1826, conferred no title, unless made in conformity with law. Proof of compliance with law devolves on party offering. Garrett *vs*. Wiggins, 1 Scam., 335; Hill *vs*. Leonard, 4 Scam., 141; Doe *ex dem*. Ewing *vs*. Bean, 1 Gilman, 302. The defendant failed to connect himself even with this "paper," so called Auditor's deed. He was bound to show a claim of recorded title, legally acknowledged, executed or proved, and to start with title. The Auditor's deed was evidence of nothing, until preliminary proof was made.

Act of 1835 requires actual residence. This is plain English, and is easily understood. Enclosing and fencing land, under the Kentucky law of 1809, held not to be actual settlement. Smith *vs*. Nowells, 2 Littell, 161; McGee *vs*. Bast, 6 J. J. Marshall, 452; Myers *vs*. Buford, 7 J. J. Marshall, 251. Occupany will not bar, but seven years residence only. Occupancy may exist without a residence. Chiles *vs*. Jones *et al.*, 4 Dana, 484; Trustees *vs*. Payne, 3 Monroe, 164. The testimony in this case

shows, that the defendant did not actually reside on this land until spring of 1841.   The suit was brought in January, 1848.

Defendant's title papers show his claim to extend only to an undivided interest in the premises, with such paper claim of title for undivided interest.   He cannot set up or ask a presumption that he is the owner of the whole interest, which his paper title rebuts.   The statute could avail him as a bar, only so far as he was in actual possession by enclosure.   Sharp *vs.* Brandow, 15 Wendell, 599.

Wm. Thomas, for defendant in error :

The questions for decision in this cause, are :   I.   Did the Court err in permitting to be read, as evidence of " color of title," the deed from the Auditor of Public Accounts to William Ross.   The record shows, that the only objection to its being so read, was that no proof was made or offered, that the Auditor had, before making the sale, complied with the requisitions of the revenue law.   The deed shows, that the land was sold on the 8th January, 1827, for the taxes of 1825–6.   It is in the precise form prescribed by law, and on its face shows that all the requisites of the statute authorizing the sale had been complied with. The sale was made under the act of 1823, the 4th section of which provides : " That all sales, and other proceedings hereinafter directed, shall be good and valid, in whose name soever the said land, or claim thereto, shall be listed, entered or sold, unless he, she or they contesting the validity thereof, shall show that the tax had been actually paid thereon, or that said land was not legally subject to taxation ; which, in all cases, shall be the first things required of any one attempting to set aside a sale under this act."   The seventh section provides, that " the Auditor's deed shall vest the title in the purchaser, completely and perfectly, unless the land should be redeemed," &c., under the provisions of the law.   It is insisted that the Legislature intended that the deed should be evidence of the sale, and that the regularity and legality of the previous proceedings should be presumed.   Upon any other construction, the latter clause becomes wholly inoperative.   The authority of the Auditor to sell lands for taxes is not questioned.   No exception is taken to the form of the deed.   " It is sufficient in form for the purpose of conveying title."

But it is said that these questions have been decided in the cases of Garrett *vs.* Wiggins, 1 Scam., 336, and Hill *vs.* Leonard, 4 Scam., 140. In both those cases, the deeds were offered in evidence of title; whereas, in this case, the deed is offered as evidence of " color of title " only. The case of Garrett *vs.* Wiggins was in respect to a sale made under the act of 1826–7; which declares, that the deed executed by the Auditor " shall vest a perfect title in the purchaser, unless the land shall be redeemed according to law, or the former owner shall show that the taxes for which it was sold had been actually paid, as required by law; or that the land was not legally subject to taxation," omitting the words in the act of 1823, to wit : " which in all cases shall be the first things required of any one attempting to set aside a sale under this act."

In the case of Hill *vs.* Leonard, the Court refers to the case of Garrett *vs.* Wiggins, and say : " In that case a sale and conveyance of land had been made by the Auditor, for the payment of taxes, under the same laws that the sale and conveyance in this case was made." It is, therefore, clear that the Court, in deciding this case, gave no construction to the act of 1823. But admitting that the decisions in the cases referred to settle the construction of this act, the question still remains as to the admissibility of the deed, as evidence of " color of title." Upon this question the decisions may be said to have been conflicting. Upon a review of many decisions on this point, Angell, in his work on limitations, edition of 1846, page 435, says : " As to what constitutes color of title, it seems to be very well agreed, that if the title under which the party relying on possession claims, and originally entered, be ever so defective, the possession is, nevertheless, adverse." See, also, same book, edition of 1829, 86 : " If one enters upon land, under color of title, by deed or other written document, and occupies and improves the land, he acquires in law actual possession, to the extent of the boundaries contained in the writing, and this though the title conveyed to him by the deed is good for nothing." 2 Smith's Leading Cases, 415, and cases cited; 23 Wendell, 320. The act of limitations of 1834–5, Revised Statutes, 349, provides for the limitation of actions of ejectment, &c., as against any person " possessed by actual residence thereon, having a connected title in law or equity, deducible of record, from this state

or the United States, or from any public officer or other person authorized by the laws of the state to sell lands for the payment of taxes," &c.    The act of 1838–9, Revised Statutes, 104, provides that every person in the actual possession of land, under claim and color of title, made in good faith, and who shall for seven successive years continue in such possession, and shall, also, during said time, pay all taxes legally assessed, &c., shall be held and adjudged to be the legal owner, &c., to the extent, and according to the purport of his or her paper title.    Comparing these provisions of the statutes with the principles settled by the authorities referred to, it is clear that the Auditor's deed was properly admitted as evidence of color of title, if not as evidence of title.    If proof had been made of the listing, advertising and selling the lands, as required by the statute, and insisted upon by the plaintiff, then we should have had, not color of title, but a good title, under which we could defend or assail.

2.    Did the Court err in admitting to be read as evidence certified copies of the deeds from William Ross to Henry Staunton, Henry Staunton to Jacob and Isaac Ford, and Isaac Ford to the defendant?    The objection to the reading of the deed from Ross was, first, that it does not appear from the certificate of acknowledgment, that the person before whom it was taken was a justice of the peace of any county in Illinois; second, that the original deed should have been produced; and this objection applies to the other deeds.    The answers to these objections are, first, that proof was made, that the person before whom the deed from Ross was acknowledged, was a justice of the peace of Pike county; second, that the absence of the originals was sufficiently accounted for.    No other objections can now be urged against these deeds.    Sargeant *vs.* Kellogg, 5 Gilman, 281.

The evidence in regard to the deed from Ross was sufficient; it purports to have been executed in the county of Pike.    The People *vs.* Ammons, 5 Gilman, 106.    Upon the question of admitting copies, the defendant contends that the true rule upon the point is, that wherever original deeds are shown to be out of reach of the process of the Court, and of which the party has no right to the possession, certified copies may be used.    Revised Statutes, 108; Mariner *vs.* Saunders, 5 Gilman, 125.

3.    The third question relates to the proof of payment of taxes.    No specific objection was stated in the Court below to the

receipts, and none is presented by the assignment of errors. The objection that one payment was made by the purchase of the lands, when sold for taxes, is answered, that the effect and result is the same as if payment had been made.

4. The fourth question, involving the correctness of the instructions to the jury, will be settled by the decision upon the first question.

Upon the question of new trial, if this Court decides that the Auditor's deed was evidence of a good title, or that it was evidence of " color of title," the instructions were properly given. The questions of possession and payment of taxes, were questions of fact, to be proved before the jury.

J. GRIMSHAW, in reply :

The authorities quoted for the defendant in error apply to statutes of limitations, similar to our twenty year limitation law. This class of laws, in terms, does not require color of title. The Courts in most of the states, and in England, until passage of recent English statutes, prescribed the necessity of proving color of title to characterize the adverse possession as being with claim of title to the land, and not mere acts of trespass. The Courts in Pennsylvania have uniformly decided, under a similar limitation law, that actual adverse possession is the only question to be determined; their decisions, are not, therefore, in point.

This sale was made under law of 1823, the same as the deed in the case of Hill *vs.* Leonard, 4 Scam., 141. The Legislature had not then changed the inflexible rule of evidence, requiring certain facts to be proved before this deed could be used in evidence for any purpose. It is this rule of evidence that excludes this deed, either as evidence of title or color of title. Pope *vs.* Hinman, 1 Gilman, 131. The questions as to admissibility of deeds and tax receipts by Circuit Court, are properly now before this Court. The purchase of land at sale in 1845, for taxes of 1844, was not a payment of taxes. It was made, not to pay taxes, but to acquire a new title. The subsequent redemption by Irving from this sale, took away any benefits arising to defendant from such purchase.

52

Opinion by Mr. Justice TRUMBULL :

Irving sued Brownell in an action of ejectment, to recover the north-west quarter of section twenty-eight, township four south, range six west of the fourth principal meridian, situate in the county of Pike.

The declaration was served January 18, 1848. The plaintiff traced title to the premises from the United States to himself, and the defendant admitted that he was in possession of the south fifty-two acres of said land, at the time the action was commenced.

The defendant then offered in evidence an Auditor's deed of the land in question to William Ross, dated January 20, 1829, and reciting a sale of the land January 8, 1827, for the taxes of 1825 and 1826 ; also a deed from William Ross to Henry Staunton, for the same land, dated May 12, 1836 ; also a deed from Henry Staunton to Jacob Ford and Isaac Ford, for the same land, dated March 8, 1837 ; also a deed from Isaac Ford to himself, for an undivided half of said land, dated January 28, 1839. The defendant also offered in evidence receipts for the payment of taxes upon the land claimed, for the years 1839, 1840, 1841, 1842, 1843 and 1845, and gave evidence of the purchase by him of the south fifty-two acres of said quarter section, for the taxes of 1844.

All the foregoing evidence offered by defendant, was objected to by the plaintiff, but admitted by the Court. It was further in evidence, that the defendant cut timber, dug a well, and took shingles and boards to build a house upon the south fifty-two acres, in the fall of 1840 ; that he erected a house and removed upon said land in the spring of 1841, and has resided thereon ever since. The plaintiff gave in evidence a redemption by him from the tax sale of 1844, and a receipt for the payment of taxes for the year 1846. The Court, at the instance of the defendant, gave various instructions to the jury, all of which were excepted to by the plaintiff at the time. The jury found the defendant not guilty. A motion for a new trial was then made and overruled, and judgment entered against the plaintiff for costs. Numerous errors have been assigned upon this record.

It is assigned for error, that the Auditor's deed was improperly admitted in evidence, without proof of the signature of the Auditor thereto, and without proof of the prerequisites of the

law preliminary to the tax sale having been complied with.   It has several times been decided by this Court, that no proof of the execution of an Auditor's deed is necessary, to entitle it to be read in evidence, and we are not disposed, at this time, to reinvestigate that question, or the reasons which led the Court originally to make such a decision.   Graves *vs.* Bruen, 1 Gil., 167 ; Rhinehart *vs.* Schuyler, 2 Gil., 523 ; Thompson *vs.* Schuyler, 2 Gil., 280.   As to the other question involved in this assignment of error, it is clear that, for the purpose of showing a complete title in Ross, the Auditor's deed was inadmissable, without proof that the prerequisites of the law authorizing the sale for taxes had been complied with.   This very point was decided in the case of Hill *vs.* Leonard, 4 Scam., 141, where the Court say that, "to render the Auditor's deed to land, made in pursuance of a sale for taxes, under the law in force in 1827, evidence of title to the land, it is incumbent upon the party offering it to show the authority of the Auditor to make it, by showing the land liable to sale, and performance by him of all the preliminary acts required by law."   The reasons for this decision are satisfactorily given in the case itself, and in that of Garrett *vs.* Wiggins, 1 Scam., 335, to which it refers.   But although the Auditor's deed should be held of itself insufficient to show title in the grantee, it is insisted by the defendant, that it furnishes such color of title, as will authorize the defendant to protect himself under it, by showing that he has been in the actual possession of the land, claiming under said deed for seven years, and has paid all the taxes assessed thereon during that time.

This brings us to a consideration of the first section of the act of March 2, 1839, entitled "An act to quiet possessions and confirm titles to land ;" which is to be found incorporated into the Revised Statutes, ch. 24, sec. 8.   So much of that section as is under consideration, reads as follows: "That hereafter, every person in the actual possession of land or tenements, under claim and color of title made in good faith, and who shall, for seven successive years after the passage of this act, continue in such possession, and shall, also, during said time, pay all taxes legally assessed on such land or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title."   The

object of this statute clearly was to protect those who, supposing that they had a good title to land, should take and continue the actual possession thereof, and pay taxes upon the same for the space of seven years.

Three things are necessary, and must concur, to enable a party to avail himself of this statute : 1. He must have a claim and color of title to the land made in good faith. 2. He must have and continue in the actual possession thereof, for seven successive years. 3. He must pay all taxes legally assessed upon said land, during the said seven years.

What the claim and color of title must be, that will enable a party to take advantage of this statute, is a question of some difficulty. Under our twenty year limitation act, and under similar statutes, in other states, and in England, it has been uniformly held, that a person relying upon his possession to defeat a recovery by the party having the legal title, must show that his possession had been adverse : that is, under claim of title, although the statutes are silent as to the character of the possession necessary to bar a recovery in such a case. It would seem, therefore, that the Legislature intended to require a different sort of title to protect a party claiming under the seven year law from what had been required under the limitation act of twenty years, else why require that claim and color of title, made in good faith, should be essential to protect a party claiming under the former act. We are bound to give these words some meaning, and they will have none if the same construction is to be put upon the act as if they were not in it. It is manifest that the Legislature only intended to protect those who had been in possession of land, and paying taxes upon it, under the belief that they had a good title. When would a reasonable man suppose that he had a claim and color of title to land, or what sort of a title would such a man, in good faith, pay out his money for ? For none other, we imagine, than what he supposed to be a good title. If he knew that he was not acquiring such a title, or if the circumstances should be such that a reasonable man might know that the title he was obtaining was wholly defective, then it would not be a title acquired in good faith, and, consequently, not entitled to the protection of the act of 1839. By the words " claim and color of title made in good faith," must, therefore, be understood such a title as, tested by

itself, would appear to be good—not a paramount title, capable of resisting all others, but such an one as would authorize the recovery of the land when unattacked, as no better title was shown : that is, a *prima facie* title. Such a title, connected with seven years actual possession and payment of taxes, becomes invincible. The Auditor's deed offered in evidence in this case, as has already been shown, was not such a title as, unaccompanied with other proof, it did not afford *prima facie* evidence of title, and it was not, therefore, admissible in evidence, for the purpose of showing claim and color of title under the act of 1839. But even if the Auditor's deed were held to be such a claim and color of title as the statute intended, still it would not avail the defendant, for the reason that the evidence does not show that he had actual possession of the premises in dispute, for seven successive years, previous to the commencement of the action ; nor does it show that he paid all taxes assessed upon the land during said seven years. The action was commenced January 18, 1848, and it appears from the evidence, that the defendant first took actual possession of the premises in the spring of 1841. It is true, that he cut timber, dug a well, and exercised some acts of ownership upon the land the fall previous, but those acts did not constitute that actual possession contemplated by the statute. As the Legislature, in reducing the time of possession, thought it expedient, as has already been shown, to require stricter proof of apparent title to the land than was requisite under the old limitation of twenty years, so also, and for the same reason, they have thought proper to require that the possession under the act of 1839, should be more open, marked and manifest, than under the former law. It would be unreasonable, when the Legislature have used language clearly manifesting a different intention as to the character of the possession requisite under the two acts, to give the same liberal construction to both. The Legislature, undoubtedly, meant what they have said, that the possession must be actual : that is, visible, open and exclusive, either by an enclosure, the erection of buildings, or in some other way, actually appropriating and using the land, in such an open, visible manner, as to give the real owner notice that the person in possession was occupying and claiming the land as his own.

The defendant is equally at fault, in his attempt to show payment of taxes upon the land, as required by the law. The statute requires that the person in possession should pay all taxes legally assessed upon the land, during the seven successive years that he has possession. A payment of taxes for seven years, part before and part after possession taken, does not answer the requirement of the law. In this case, it is not pretended that possession was taken before the fall of 1840, and there was no evidence of the payment of taxes by the defendant, after the year 1845. The taxes of 1844 he did not pay, but suffered the land to go to sale, and then purchased it in; which he insists was a payment of the taxes of that year. This is not so. The land was made to pay the taxes by the sale, not the defendant. He cannot claim that he paid the taxes, while he, also, at the same time, took the chance of getting a tax title upon the land. It is only lands upon which taxes are not paid that can be sold. In no view of the case did the defendant put himself in a situation to have the benefit of the act of March 2, 1839. There is, however, another act, passed January 17, 1835, under the second section of which (which is to be found in Revised Statutes, ch. 66, sections 8, 9 and 10,) the Auditor's deed was admissible in evidence. The act of 1835 does not, like that of 1839, require that the person who would avail himself of its provisions, should have a claim and color of title to the land, made in good faith, but it simply requires that he should have "a connected title in law or equity, deducible of record, from this state or the United States, or from any public officer, or other person authorized by the laws of the state to sell such land for the non-payment of taxes," &c. The Auditor's deed in this case is just such a title. On its face, it is perfect and complete. No objection can be taken to its form, and if the prerequisites to the sale of the land by the Auditor were shown, it would, of itself, constitute a perfect and complete title to the land; and, without proof of these prerequisites, it is a sufficient title to protect any one who can connect himself with it, and show that he has been possessed of the premises by actual residence thereon, under such title, for seven years. If this were not so, the statute would have no meaning; for to require a party in such a case as this, to show that the prerequisites to the sale for taxes by the Auditor had been complied with previous to such sale, would

Irving *vs.* Brownell.

be to require him to make out a perfect title, under the tax deed; and in that event, he would have no need to resort to proof of possession to protect him in the enjoyment of the land. His title would be paramount to any other without possession, and the act passed to protect him in his possession would be perfectly nugatory. The word " title," as used in the act of 1835, should not, therefore, be construed to mean a perfect title, nor is the word, in its ordinary acceptation, understood in such a restricted sense. There are perfect titles and apparent or imperfect titles. Even a naked possession constitutes a species of title, though it may be the lowest degree. The meaning of the word is, therefore, to be ascertained from the connection in which it is used, and there can be no question, when the whole act of 1835 is examined, that the Legislature never intended by the term " connected title " a perfect and complete title. The title contemplated can mean nothing more than such a title as is evidenced by a deed in proper form, and duly executed by one of the officers or persons named in the act, as the source with which the person relying upon it is required to connect himself, by a regular chain of conveyances.

It appears from the evidence, however, that the defendant had not been possessed of the premises in question by actual residence thereon for seven years, when this action was commenced; he was not, therefore, in a situation to claim the protection of the act of 1835.

As this case will have to be remanded, to afford the defendant an opportunity to supply, if he can, the necessary evidence to support his case, we will now notice the objections taken to the introduction in evidence of the chain of title from Ross to the defendant. The first objection to two of these deeds was, that certified copies were offered and admitted in evidence, without sufficiently accounting for the non-production of the originals. The statute declares, that when it shall appear to the satisfaction of the Court that the original deed is not in the power of the party wishing to use it, a transcript of the record thereof, certified by the recorder, may be read in evidence. Revised Statutes, 108, sec. 25. Under this statute, and the decisions of this Court, the defendant laid a sufficient foundation for the introduction in evidence of the copies. The objection to the certificate of acknowledgment upon the deed from Ross to

Staunton, that it does not show of what county the officer taking the acknowledgment was a justice of the peace, is untenable. It appears from the record that Campbell, who made the certificate, was called as a witness, and testified that he was a justice of the peace of Pike county, at the time he took the acknowledgment. But without this proof, the certificate was sufficient, as the Court, when sitting in Pike county, would officially take notice who were the justices of the county, without any proof thereof. Shattuck *vs.* The People, 4 Scam., 481.

The objection to the certificate of acknowledgment upon the other deeds, that they were taken before a commissioner in the state of New York, who affixed no seal to his certificate, and of whose official character there was no sufficient evidence, as also that one of the acknowledgments was not dated, were all properly overruled. It has been decided, in the cases of Vance *vs.* Schuyler, 1 Gil., 160, and Thompson *vs.* Schuyler, 2 Gil., 271, that "no certificate of the official character of a commissioner in another state, before whom the acknowledgment of a deed is taken, need be produced." The statute does not require that the certificate of acknowledgment made by a commissioner of another state, should be under seal, and if the acknowledgment was sufficient, when the deed was offered in evidence, the want of a date to the certificate would not vitiate it.

It is unnecessary to pass separately upon the numerous errors assigned, as they are all substantially disposed of, by the construction which is put upon the limitation acts of 1835 and 1839.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed.*