DANIEL T. ELSTON *et al.*

*v.*

CAROLINE KENNICOTT *et al.*

1. POSTPONEMENT OF TRIAL—*of the rights of parties.* When, during the pendency of a trial, the defendant dies, and a *scire facias* issues to the widow and heirs, and they appear and defend, and after the death of the defendant, the plaintiffs file a new declaration, a postponement, granting leave to the defendants to plead to the new declaration, and present additional testimony, was in aid of justice in the new aspect of the case.

2. EVIDENCE—*of refreshing a witness' recollection.* A witness can testify only to such facts as are within his own knowledge and recollection, though he is allowed to refresh and assist his memory by the use of a written instrument, memorandum or entry in a book; but after inspecting the writing, he must be able to speak to the facts from his own recollection.

3. LIMITATION ACT OF 1839—*what constitutes color of title.* All that is necessary under the act of 1839, is, that the instrument relied on as color of title, shall purport on its face to convey title to the grantee.

4. So that a party who is defending his possession under claim and color of title, need not resort to the most remote link in the chain of title under which he claims, but it is enough if he commences to deduce his color of title from any intervening deed, which was executed prior to the commencement of the seven years, during which he expects to show possession and payment of taxes.

5. Where a party holding color of title to land, sells the same and receives the purchase money, and executes the deed to the purchaser by a wrong name, the deed being intended for the purchaser, and he receiving it as his deed, and entering into possession under it, such deed will be color of title to the purchaser, though in a wrong name.

6. But if there is no such person as the one named as grantee in the deed, then the legal title will not pass out of the vendor, but will be held by him as trustee for his vendee, and a payment of taxes by the latter, as the *cestui que trust* will be regarded as a payment under that title and in protection thereof

7. SAME—*of the payment of taxes—and the evidence thereof.* Under the act of 1839, the important question is, were the taxes duly paid, and by the person claiming title, or by some person for him, it being sufficient to show the fact by such evidence as will satisfy a jury trying the case.

8. A receipt, unless coupled with a contract, is only *prima facie* evidence, and may be rebutted or explained by parol.

9. So where a tax receipt is alleged to be signed by a person not having an official character, it is proper to show by parol, that the receipt was given in good faith on the payment of the taxes, and by a person connected with the collection of the revenue, and duly credited on the collector's books.

10. And if the receipt mis-describe the premises upon which the taxes were intended to be paid, such mis-description may be so explained by parol, as to show what premises were intended to be embraced in the receipt.

11. And erasures and alterations appearing on the face of the receipt, may be shown to have been made by the person giving it, and under circumstances which rebut any allegations of fraud on the part of the holder.

12. So, too, if the receipt does not specify the year for which the taxes were paid, such omission may be supplied by parol evidence.

13. Where a party claims under color of title, the statute requires the payment of all taxes "legally assessed" upon the premises, for seven successive years, and the omission to pay them for any one year will not be excused because of some technical defect in the assessment for that year, which would have vitiated it if the question had been made.

14. The proper construction of the statute in that regard is, that there must be, in all cases, an actual payment of taxes for seven successive years, and when this is shown, the purpose of the statute is answered, even though it may appear, that for some of those years, or for all of them, the assessment was illegal.

15. Though in a case where a party shows an actual payment of taxes for seven successive years, but during one or more of the years he had left a part of the tax, as for example, the road tax, unpaid, on the ground it was illegally assessed, perhaps he might claim the benefit of the phrase "legally assessed," and that by paying all other taxes, he is within both the letter and the spirit of the statute; but when he shows that he has paid none of them, on the plea that they were illegally assessed, he cannot claim to be within its spirit.

16. LIMITATION ACT OF 1835—*of its construction.* The act of 1839 was designed to protect a different grade of title from that embraced in the act of 1835; and while mere color of title would be sufficient under the former, something more would be required under the latter; the act of 1835 requires a *prima facie* title.

17. So where a defendant in ejectment deduces title from a tax deed, but failed to produce the judgment and precept upon which it was based, while the tax deed is color of title, and as such sufficient under the act of 1839, it is not, without the judgment and precept, a *prima facie* title, such as is required by the act of 1835.

18. FORMER DECISIONS. The case of *Irving* v. *Brownell,* 11 Ill. 402, giving a different construction to both those acts, was overruled by the case of *Woodward* v. *Blanchard,* 16 ib. 425, not only upon the construction given to the act of 1839, but also upon that given to the act of 1835.

19. TAX TITLE—*of the judgment and prior proceedings.* It has been held, and is the settled rule in this State, that a judgment for taxes, in which the amount of the taxes does not appear, either by the use of apt words, or of the recognized dollar mark, cannot be sustained.

20. But this rule does not apply to the want of a word or a character to the numerals to indicate the amount of taxes due, as a defect to anything prior to the application of the collector for a judgment against delinquent lands.

21. So the want of the dollar mark in the assessment roll, to designate the amount of the valuation or the taxes, will not render the assessment, or the collector's warrant, invalid and illegal.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

The facts are fully stated in the opinion.

Mr. WALTER B. SCATES, for the appellants.

Messrs. GOODRICH, FARWELL & SMITH, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment, brought in the Superior Court of Chicago, by Daniel T. Elston and others, against William H. Kennicott, to recover the possession of the east one-third and west one-third of lot three (3), in block ninety-five (95), in the school section addition to Chicago, claimed by the plaintiffs as their property in fee. The defendant pleaded the general issue, and admitted, that at the time of the commencement of the suit, he was in possession of the premises.

During the progress of the suit, the defendant died, and his widow, Caroline Kennicott, and the others, his heirs at law, were brought in by *scire facias*, and pleaded to the action. The cause was tried by the court without a jury, and the court found for the defendants. A motion for a new trial having been overruled, judgment was rendered for the defendants.

To reverse this judgment, the plaintiffs have appealed to this court, and have assigned various errors, which will be considered.

The facts are, briefly, that the premises in question were conveyed by patent from the State, to one William Worthingham, on the 6th of December, 1835, on a certificate of sale made to him by the Commissioners of School Lands of Cook county, and it was agreed that section sixteen was a school section, and was laid out into two lots, and recorded as an addition to the town of Chicago. A quitclaim deed from Worthingham to the plaintiffs, dated October 1, 1859, completed their title. The defendants set up the statute of limitations of 1839, and in support thereof introduced a deed dated May 20, 1842, from the sheriff of Cook county, to Hugh T. Dickey, as the

purchaser of lot three, in block ninety-five, school section addition, at a tax sale made in 1840 for the State and county taxes due and unpaid, and assessed against this lot.

They further exhibited a quitclaim deed from Dickey to Thomas Hoyne, for the same lot, dated June 27, 1842; a warranty deed from Hoyne to Caleb Morgan, dated May 1, 1843; a warranty deed of the west third of this lot, from Caleb Morgan to Michael Monich, dated May 1, 1843; a quitclaim deed from Deidrich Mong to William H. Kennicott, dated February 1, 1853, for this west third. The defendant also produced a deed dated June 11, 1852, from Caleb Morgan to Deidrich Mong, for this west third, written on the back of the deed Morgan had executed to him, by the name of "Michael Monich," reciting therein that by inadvertence and mistake, the name of Deidrich Mong, "was incorrectly set forth in said deed, and erroneously spelled Michael Monich."

For the east third, defendant produced in evidence a deed from Caleb Morgan to himself, dated August 2, 1845.

The defendants then proved, by one Wheeler, that he had been acquainted with W. H. Kennicott twenty-four years, and with the property in question, seventeen years; knew of Kennicott's purchase of the east third; was some slight improvements on it at the time; a shed or other small building, one story high, which Kennicott used for storing grain; he occupied rooms over witness' store, on the adjoining block, in 1844 or 1845, and while so occupying, he built a new dwelling house on the east third, and enclosed the premises with a new fence. The new building had been occupied as a dwelling ever since it was finished until the present time (1862). A widow Hoyt first occupied it for a year or more, and then Kennicott, who, witness thinks, occupied it not less than seven years. This witness is corroborated substantially by the testimony of Hamilton, Peacock and Cobb, the carpenters and joiners, who built the house, and who fixes the date of its erection in the

year 1848, having commenced it in May and completed it in September.

To prove possession of the west third, the deposition of Deidrich Mong was introduced, by which it appeared that he bought the west third of Morgan, May 1st, 1843, who gave him the deed in evidence, in which he was called "Michael Monich," by mistake. He testifies he came from Germany in 1841, and could not speak English when he bought the lot. He worked for Morgan, as a cabinet-maker, twenty years, who, during all that time, had not usually called him by his right name—calls him "Moonich." The summer after he bought the lot, he built a dwelling house on it, costing three hundred dollars, built a fence around the lot, and filled in the front with dirt. After the house was completed, he lived in it six or seven years, and then rented it out; sold the lot to Kennicott, and gave him the deed in evidence. He testified further, that he paid the taxes on this property—city, county, and every tax that was to be paid; began to pay "right at the time" he bought it, and continued to pay until he sold to Kennicott, and took the receipts which he produced on the trial, numbered from one to sixteen, inclusive, and gives as a reason why some of the receipts appear to be given to "D. Monich," some to "Monch," and some to "Mooncy," that "these Yankees did not know how to spell his name;" that he never owned any other lot on Madison street besides this. When he took the receipts he did not read them; that he could not read them, not understanding the English language. When he paid the taxes, he told the collector what property he wanted to pay on, and had, every time, on a paper, the lot and number. He states, also, that after Kennicott bought of him, he rented it out, and that the house witness built was still standing on the lot, on the back part of it, to which place Kennicott moved it.

The plaintiffs objected to several of these tax receipts, namely : to receipt No. 2, for the State, county and special taxes for the year 1845, for the reason that it did not specify

on what part of lot 3 the taxes were paid ; it describes a lot as "30 feet on Madison street, by 189 feet deep, of lot 3, block 95, school section addition." They also objected to receipt No. 4, on the ground that it did not appear that the property mentioned was in the school section addition to Chicago ; to receipt No. 6, that it appeared to be for the payment of the taxes on a lot in the original town of Chicago ; to receipt No. 14, on the ground that it appeared to be for the north third, and not for the west third of lot three ; to receipt No. 17, on the ground it appeared to be for the south third, and not for the east third of lot three. The objections were overruled by the court, and the receipts admitted in evidence. This action was had at the July hearing, in 1862, at which time, after argument, the cause was submitted and taken under advisement. It would appear from the record, that no decision was made, and no step taken in the cause until February term, 1866, when the plaintiffs suggested the death of the defendant, and a *scire facias* was ordered to bring in the widow and heirs. The record then states, that on March 26, 1866, the plaintiffs appeared by their attorney, and the widow and adult heirs of W. H. Kennicott by their attorneys, entered their appearance, and pleaded not guilty to the declaration; and the minor heirs, by their guardian *ad litem*, entered their appearance and put in the same plea, all of them having been served with process.

At this stage of the case, the plaintiffs' counsel submitted the cause to the court, as before then tried, and asked that a finding and judgment might be made upon the evidence and arguments before then submitted. This was opposed by the defendants, and they asked to be allowed to introduce further testimony, which the court permitted, against the objection of the plaintiffs, and exception taken. This testimony consisted of the depositions of Hamilton, Peacock and Cobb, to the fact of possession by Kennicott of the east third.

·25—46TH ILL.

After the reading of these depositions, the further hearing of the cause was postponed to the 23d of May, 1866, at which time, the parties being present, the counsel for the plaintiffs stated that he had made, and should insist upon certain objections, which he then specified, to all the tax receipts that had been given in evidence, and did, then and there, present specific objections to all those receipts, from No. 1 to No. 34, inclusive, except as to Nos. 18, 19, 23, 24, 26, 30, 31 and 33, accompanying the same with the statement that he made no objections to the receipts except those above specified; and thereupon, he moved the court to exclude and disregard as evidence, each and every one of the deeds, tax receipts and depositions, and every part thereof which had been offered in evidence by the defendant, Kennicott, in his life time, and by the present defendants. This motion was overruled by the court, and the plaintiffs excepted.

It further appears from the record, that on so disposing of this motion, the plaintiffs' counsel submitted an argument and written brief of his points and authorities in the case, including the foregoing special objections to the deeds, and tax receipts, and depositions, upon which, the defendants, by their counsel, asked a postponement of the cause, and further time to give further evidence and to answer the plaintiffs; whereupon, the further hearing of the cause was continued until the 18th day of October, 1866, at which day the parties and their attorneys being present, the defendants offered to call and examine other witnesses, and to introduce additional written evidence on their part, which the court allowed, against the plaintiffs' objections.

For what reason the cause was continued from July, 1862, to May, 1866, is not apparent from the record, but that it was mutually satisfactory, must be inferred, as no objection thereto appears.

The plaintiffs make one of their points on this action of the court in May, 1866, and complain of it as harsh and oppressive,

and ask this court to prescribe some rule which shall govern like cases.

When it is considered, that at the last hearing, in July, 1862, the plaintiffs formally objected to five only of the tax receipts in a series of thirty-five; that during the interval from that date to February term, 1866, the defendant had died; that his widow and heirs at law had been brought in by process, and had pleaded to the action, and that the plaintiffs then attacked all the tax receipts in the series, except eight of them, specifying the nature of their objections, and presented a labored brief and argument in support of the objections, we cannot think the court went too far in allowing the defendants a reasonable time in which to answer the objections, putting, as they did, a new phase on the case, differing from that which it had assumed at the time of the death of the defendant. The plaintiffs had amended their declaration by changing their claim to two certain pieces of land; to one piece of land, by striking out the words "and the west thirty feet of said lot," and filed a new count for the west third. To this amended and new declaration, no plea had been filed by Kennicott in his life time, so that, when his widow and heirs were brought in by process, a plea by them was not inappropriate, and the plea was filed without objection on the part of the plaintiffs.

This being the then aspect of the case, it was no unusual indulgence for the court to allow time to the defendants to prepare for the great contest, in the issue of which, all, save eight of the tax receipts, were involved. It is true, the cause had been submitted to the judge sitting as court and jury, but it was upon another and different declaration, and on the simple question of the validity of the five specified receipts. We see nothing in the action of the court in granting the delay, and hearing additional testimony, in any degree, improper, or as calculated to prejudice the plaintiffs. It was quite as desirable to them as it could be to the defendants, that all the facts

should come out on this trial, and if they were strong enough, expensive and protracted litigation would be avoided. It was better for both parties, that the whole case should be then heard on all the facts.

We will now proceed to the examination of the more important points made by the appellants' counsel in his brief, and which he has discussed at great length in his printed argument submitted, supporting the same by a large number of references to cases supposed to bear upon the points.

The first point he makes is, that the appellees do not claim title by payment of taxes on unoccupied lands, but upon possession and payment of taxes for seven consecutive years, upon a paper title ; and they must show a judgment and. execution to entitle them to read the sheriff's deed to Dickey in evidence.

In support of their positions, appellants rely upon the cases of *Hinman* v. *Pope*, 1 Gilm., 131; *Atkins* v. *Hinman*, 2 ib., 437; *Vance* v. *Schuyler*, 1 ib., 160; *Thompson* v. *Schuyler*, 2 ib. 279, and *Irving* v. *Brownell*, 11 Ill., 402.

The last two cases simply decide that under the revenue laws of 1827 and 1829, a deed executed by the Auditor of Public Accounts, on a sale for taxes, might be given in evidence without further or any additional proof.

In the two first named cases, the plaintiffs in the ejectment sought to establish a paramount title by the production of a Sheriff's deed, purporting to convey the premises on a sale made by him for delinquent taxes. This was all the evidence they proposed to offer, and the court very properly held, as they claimed through the sheriff, they must show his authority to sell by showing a judgment and the precept thereon. This case is wholly unlike either of these cases. Here the defendants assert no paramount title to the lot ; they are acting on the defensive, claiming only that they have such color of title, made in good faith, as will, in connection with their possession and the payment of taxes for seven successive years, entitle

them to keep the possession against the paramount title the plaintiffs assert. The defendants might have gone no further back than Hoyne's deed to Morgan, for the purpose of showing color. All that is necessary under the act of 1839, is, that the instrument relied on as color of title, shall purport on its face to convey title to the grantee, which Hoyne's deed to Morgan does purport to do, and is with warranty of title. *Bride* v. *Watt,* 23 Ill., 507; *Holloway* v. *Clark,* 27 ib., 483. We see nothing in the case of *Irving* v. *Brownell,* 11 Ill., 402, affecting this question, and the case itself has been overruled by subsequent decisions of this court.

The next point made by appellants is, that Morgan, having conveyed to Michael Monich, by warranty, on the first of May, 1843, had no estate or interest left to convey by his second quitclaim deed, to Deidrich Mong, of June 11, 1852; and that Morgan is incompetent as a witness to make the statements contained in the recitals of the last named deed, and the statements are incompetent and inadmissible at law to correct a mistake.

This point, in the view we have taken of the case, does not seem important to be considered. We are aware of the rule that mistakes in deeds, where sought to be corrected, can only be corrected in a court of equity. There is no attempt here to correct a mistake.

The view we take of the case, is this: By the first section of the act of 1839, it is provided, that every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall, also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and

continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

Now, Mong having received a deed for the west third, from Morgan, intended for him and for him only, having paid the purchase money, and having entered into possession under that deed, had a claim and color of title; this deed was color to him; it was intended for him; he received it as his deed, though in a wrong name. But if there was no such person as "Monich," as it appears there was not, then the legal title did not pass out of Morgan by this deed, and he continued to hold it as the trustee of Mong; and the payment of taxes by Mong the required time, protected the title remaining in Morgan.

Morgan was the trustee, and Mong the *cestui que trust*, and this court held, in *Cofield* v. *Furry*, 19 Ill. 183, that if payment of taxes is made by the *cestui que trust*, the effect is the same as if made by the trustee, for the two interests united make the estate or legal and equitable title to the land, standing together and not in hostility to each other. The true question in such case is, under what title were the taxes paid. See also, *Darst* v. *Marshal*, 20 Ill. 227; and *Dunlap* v. *Dougherty*, ib. 397.

Morgan held the legal title in trust for Mong, and payment of the taxes by Mong protected that title. The title assured to Mong by the deed of June 11, 1852, changes not the aspect of the case, and was unimportant as an instrument of evidence. Morgan's deed to Monich, who never had an existence, was of no more validity than a deed to a dead man; consequently, Morgan receiving the purchase money from Mong, continued seized to the use of Mong; the legal title remained in him, and it is placed beyond doubt by the evidence, that the taxes were paid under this title, and comes fully within the case of *Cofield* v. *Furry*, *supra*.

It is not pretended the mistake in the first deed could be corrected by proof in an action of ejectment, nor was it. The

claim and color of title was fully made out in Morgan, to protect which, the payment of the taxes under that title for seven consecutive years by Mong, cannot be called in question.

The next point made by appellants is, that the receipts could not be explained by parol evidence.

It is impossible we can take up, one by one, the many specific objections made to this multitude of tax receipts. They are, substantially, as follows: *First*—Admitting parol evidence to explain the receipts. *Second*—Some of the receipts were signed by persons other than the collector of taxes. *Third*—that there were material alterations and erasures, and interlineations in some of them, and which were not satisfactorily explained to entitle them to be read in evidence. *Fourth*—That in some of the receipts, the description of the property was too uncertain, and did not identify the part of lot in controversy, and that the evidence admitted for such purpose was incompetent. *Fifth*—That receipt number 12, and the parol evidence to fill the blank, were both inadmissible, and insufficient to prove the payment of the taxes for the year 1850.

Some of these objections go to the payment of the taxes on the east third, which Kennicott acquired from Morgan, as well as to the west third, claimed and possessed by Mong, and sold and conveyed by him to Kennicott.

The first objection, and some of the others, is fully answered by the decision of this court in the case of *Henchman* v. *Whetstone*, 23 Ill. 188, in which it was held, that the statute does not provide any mode of proving the payment of taxes, and that its requirements would be answered as fully without as with a receipt—a receipt forms no part of the payment, but is only evidence of it—and verbal evidence by a witness, as to the payment would be quite as available. It was further held, that receipts, unless coupled with a contract, were only *prima facie* evidence, and might be rebutted or explained by parol. This court has never regarded them in the light claimed by

the appellants, as muniments of title. They are simply, what they purport to be, receipts for the payment of money.

The next objection is, that some of the receipts were signed by persons not having an official character. These were explained by the persons giving them, as having been given in good faith on the payment of the taxes, and by persons connected with collection of the revenue, and duly credited on the collector's books. The important question is, were the taxes duly paid, and by the persons claiming title, or by some person for him? If no receipt be taken, as we have said a receipt need not be, it is sufficient to show the taxes were paid by the party claiming the benefit of the payment, by such evidence as would satisfy a jury trying the fact. If this were not the rule, of little avail would the act of 1839 be found, when we consider the carelessness, not only of property owners, but of tax collectors. When the question is made as to the payment of taxes, evidence should be furnished sufficient to satisfy the court and jury of the fact of payment.

Mong states, in his deposition, that he paid the taxes on this lot every year at the proper time—that he had no other lot than this in that locality. This evidence, coupled with the receipts which he held and exhibited, and which were given to him as the tax payer and owner of the lot, raises a strong presumption, which the judge trying the cause could not disregard, that the taxes were regularly paid for seven successive years on the lot in question.

As to the third point, we think the erasures and alterations were sufficiently explained. They were not made by the person holding the receipts, but by the party giving them, and who made the alterations at the time. There is no pretense of any fraudulent conduct on the part of any one. The proof offered on this point should satisfy any jury of the honesty of the act.

Upon the fourth point, that the description of the property was too uncertain, and did not identify the parts of the lot on

which the taxes were paid, we are of opinion, so far as Mong's west third is involved, that his testimony is conclusive on the point. He owned no lot but the west third on Madison street, in the school section addition. There was but one school section in that township, and no other lot in the city that would answer to the description of lot 3 in block 95, but this lot there in this school section addition. It is made certain by these facts. The description in receipt number 14, of the lot as the north third, is shown to be an error by the testimony of Mong, and by that of Bernard, who assisted the collector in the collection of the taxes for 1851. He says from the close resemblance of the letter W to N, on the tax warrant for the year 1851, the error occurred. He states there were no other subdivisions of lot 3, except the east third, the middle third, and the west third, and no one paid any taxes in that year on the west third but Mong.

As to the other point, that receipt number 12 does not specify the year for which the tax was paid, and the parol evidence to fill the blank was inadmissible, we think the testimony was sufficient to show that it was not possible the tax paid Dec. 30, 1850, could be for any other year than the year 1850, and Mong testifies he paid the taxes on the west third every year after his purchase, until he sold to Kennicott in February, 1853.

These are all the receipts specially objected to for the taxes on the west third. For the east third, the receipt number 17 calls for the south third. Taylor, the collector who gave it, says it was a mistake, and it should have been for the east third, the taxes on which were paid by Kennicott in 1847 for the year 1846.

On a careful examination of all the testimony, and in view of the doctrine of the case of *Henchman* v. *Whetstone*, we cannot but be convinced that the receipts were open to explanation by parol, and have been fully explained, and by them, and by the taxes having been paid under a claim and color of title and

26—46TH ILL.

202          ELSTON *et al* v. KENNICOTT *et al*.          [Sept. T.

Opinion of the Court.

possession for seven years, a bar to the west third is fully established. Not so, however, in regard to the east third.

It is admitted by the defendants that Kennicott did not pay the taxes for the year 1847, on the east third.

The plea for his failure to pay the taxes for that year, is that the taxes were not legally assessed, the assessment roll not containing the dollar mark. But Mong paid the taxes for that year on the west third, which was on the same assessment roll, and so did other property owners, and what one proprietor could do, another one could. If the claimant chose to risk his title on this objection, it was his privilege to do so, but thereby, he has failed to comply with the statute. A party holding only a colorable title, in order to perfect it under the act of 1839, must pay taxes for seven successive years. Nothing less than this can avail him. If he pays the taxes for seven successive years, he can claim the protection of this law. If, in one of the seven years, he shall believe the taxes are not legally assessed, and does not pay them, he must take the consequences. This very question came before this court in the case of *Chickering* v. *Faile, Ex'r., et al.* 38 Ill., 342, wherein it was held that the want of the dollar mark in the assessment roll, to designate the amount of the valuation or the taxes, would not render the assessment or the collector's warrant invalid and illegal. It was further said, we would not apply the want of a word or character to the numerals to indicate the sum of taxes due, as a defect to anything prior to the application of the collector for a judgment against delinquent lands, and would not even apply it to the judgment, were it not that the judgment must find the sum for which it is rendered, and that this rule is inflexible. To all of the proceedings prior to the judgment for taxes, all persons know what the numerals represent, and act upon them accordingly.

The cases referred to by appellees have no application to the facts here. The case of *Lawrence* v. *Fast*, 20 Ill. 341,

was that the judgment was in numerals, without any mark to designate their meaning. The case of *Gibson* v. *Chicago*, 22 ib. 572, was an application for a judgment on an assessment roll, and so was the case of *Chicago* v. *Walker*, 24 ib. 493. Suppose, in this case, the collector, holding the tax warrant, had levied and sold property to pay the taxes, could it be seriously contended he would be liable to an action of trespass therefor? This want of the dollar mark is no defect to any matter or thing prior to the application of the collector for a judgment against the delinquent lands. It is seen in this case that the officers of the law acted upon the rolls and warrants for that year as legal and binding, and owners of property admitted them to be legal, and paid the taxes assessed, as appeared by the rolls. Who is to say, at this stage of the proceeding, that the assessment is illegal for the want of this mark? He who shall take that risk, takes it at his peril. It is sufficient for the tax payer to know his property is assessed for taxation in a mode he well understands. His property is charged with a tax which he must discharge. This, the defendant, when living, knew, and it would be unreasonable to give him the benefit conferred by the statute on those who make the required payments, and at the same time allow him to resist the payment on the ground the taxes were not legally assessed, and when others paid their taxes on the rolls and warrants, he deemed illegal. The right conferred is a statutory right, which can only become valuable by a strict compliance with the statute. So far as this claimant was concerned, under that statute, the taxes were legally assessed for 1847; he did not pay them; a proprietor of another portion of the same lot, paid the taxes assessed on it for that year, and by his compliance, has reaped the benefit.

On this point, we still hold, as this court has constantly held, that a judgment for taxes, in which the amount of the taxes does not appear, either by the use of apt words or of the recognized dollar mark, cannot be sustained. This rule is founded,

204          ELSTON. *et al. v.* KENNICOTT *et al.*          [Sept. T.

Opinion of the Court.

as we have already observed, on the necessity that a judgment should be for a definite sum, so expressed as not to be left to conjecture. But when it is sought to invalidate the payment of taxes on analagous grounds, other principles are to be considered.

The people of this State, through their representatives in the General Assembly, have said to its citizens and to all others, if any one or more of you have color of title made in good faith to a tract of land, and have paid all taxes legally assessed thereon for seven successive years, and are in the actual possession, your right to the possession shall not be questioned in our courts. The object of this law evidently was, to prevent speculative litigation, and to quiet titles, and in doing this, to encourage and promote the payment of taxes, so indispensable to the support of government.

Color of title made in good faith, payment of taxes for seven successive years and actual possession, are to be taken subject to the exceptions contained in the saving clause of the statute, as conclusive evidence of the right of possession, in the same way and with the same force, as twenty years adverse possession without color of title, and without payment of taxes, amounted to the evidence of such right under the old law.

Suppose a defendant in ejectment, shows color of title made in good faith and actual adverse possession, but instead of showing payment of taxes for the requisite number of years, he has not paid the taxes for any one year. He claims, however, the benefit of the statute, on the ground, that although taxes have been assessed every year for seven years prior to the commencement of the suit, and although he has not paid for a single year, yet there has been, every year, some technical defect in the assessment, which would have vitiated it, if the question had been made. He claims he has paid all the taxes "legally assessed" for seven successive years, and therefore is within the terms of the statute.

Surely, no court would hold him to be within its reason or spirit, or entitled to its protection, because he has failed to do one of the material things necessary to be done, as evidence of a right of possession.

But suppose, on the other hand, he has paid all the taxes in fact assessed under color of legal authority, during the seven years, would it not be equally unreasonable and unjust to permit his right of possession to be defeated by proof that for one or more of those years the assessment was technically illegal? Like the other supposed case, he would be within the letter of the statute, because he has paid all the taxes legally assessed, and unlike the other case, he would also be within its reason and spirit, because he has paid all the taxes actually assessed, without regard to any technical illegality. He has, in short, given that evidence of right of possession, upon which the theory of the statute rests.

After much and careful deliberation, we have come to the conclusion on this point, that the proper construction of the statute is, that there must be, in all cases, an actual payment of taxes for seven successive years, and when this is shown, the purpose of the statute is answered, even although it may appear, that for some of those years, or for all of them, the assessment was illegal.

Suppose, however, a case to arise in which the defendant shows an actual payment of taxes for seven successive years, but during one or more of the years he had left a part of the tax, as for example, the road tax, unpaid, on the ground it was illegally assessed. In such a case, perhaps the defendant might claim the benefit of the phrase "legally assessed," and that by paying all other taxes, he was within both the letter and the spirit of the statute; but when he shows, as in this case, that he has paid none of them, on the plea that they were not legally assessed, he cannot claim to be within its spirit.

As to the payment of the taxes for 1854, on the east third, there is no satisfactory proof on the point. Taylor, the collector,

206 ELSTON *et al.* *v.* KENNICOTT *et al.* · [Sept. T.

Opinion of the Court.

does not so testify. He says the words, "paid February 2d," entered opposite this property on the tax warrant, were written by him on that day. He recollects Kennicott frequently paid the taxes on that property, and has no recollection of any other person paying on it. On his cross-examination he says he thinks he gave a receipt, but does not say to whom, and that he has no recollection of any payment of these taxes, or the time, or the person, apart from and independent of the collection warrant, and that he has not personal memory, independent of the tax warrant, that the taxes of that year were paid. The rule of evidence on this point is well settled.

· A witness can testify only to such facts as are within his own knowledge and recollection, though he is allowed to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book; but after inspecting the writing he must be able to speak to the facts from his own recollection. 1 Greenleaf on Ev., § 436; Starkie on Ev., 156, and notes by Sharswood.

The witness in this case distinctly stated, after referring to the entry so made by him on the tax warrant, that he had no recollection of the payment of these taxes, or the time or the person; that he had no personal memory of the fact, independent of the tax warrant, that the taxes of that year (1854) were paid.

There being then proof of claim and color of title made in good faith, possession taken and continued for seven successive years, and the payment of all taxes assessed for the same time, a bar to a recovery of the west one-third, was fully established.

There being a failure of proof of payment of taxes for seven successive years, on the east third, the plaintiff was entitled to recover the possession of that third, their title being complete thereto.

The judgment being for defendants for both thirds, the judgment must be reversed and the cause remanded.

*Judgment reversed.*

This case was again brought before this court, at the September term, 1868, upon a petition for re-hearing, presented by the counsel for appellees, on the ground that their defence as to the east third of the lot in controversy, although not maintainable under the limitation act of 1839, was so under that of 1835. In denying the petition the court delivered the following additional opinion:

Mr. CHIEF JUSTICE BRÉESE delivered the opinion of the Court:

A petition for re-hearing has been presented in this case by appellees' counsel, on the ground, that their defence as to the east third of the lot in controversy, although not maintainable under the limitation act of 1839, was so under that of 1835.

This proposition was advanced in the original argument by appellees, but the main stress of their argument was placed upon their defence under the act of 1839, and we did not suppose they had much confidence in it, and therefore we did not discuss it. We now proceed to give the views we entertain of the defence under the act of 1835.

The law of 1835 requires actual residence for seven years, under "a connected title in law or equity deducible of record" from certain sources specified in the act. The law of 1839 requires merely color of title made in good faith, accompanied with payment of taxes for the same period of time, together with possession as required by the statute.

The well known case of *Irving* v. *Brownell*, 11 Ill., 402, was the first case in which this court gave a judicial construction to these statutes. At the time that decision was made, as will be well remembered by the then members of the bar, the construction which the profession had given those acts, was precisely the opposite of that given by the court. The law of 1835 had been copied, substantially, from a statute of the State of Kentucky, and the highest court of that state, in the case of *Skyle's heirs* v. *King's heirs*, 2 A. K. Marshall, 385, had

defined the title required by their law, as a *prima facie* title. This construction, it was expected, would be adopted by this court, while, on the other hand, it was anticipated that the law of 1839 would be construed as requiring only what was required by its terms, to-wit: merely color of title. It was supposed, and we think rightly, that the legislature were not satisfied with the protection given by the law of 1835, and in order to protect occupants, passed the law of 1839 to cover claims to land acquired in good faith, which would not be shielded by the former act. The case of *Irving* v. *Brownell*, however, reversed both these constructions. The court there held that the act of 1835 required not a title *prima facie* good, but only color of title, while the law of 1839 required a *prima facie* title.

As the language of both acts was of that general character which gives wide room for judicial construction, this court, doubtless, felt itself at liberty to give that interpretation which they thought public policy demanded, and as the law of 1839 dispensed with actual residence, it would be proper to require, under that law, a higher grade of title. That construction having once been given, perhaps it would have been quite as well if it had been afterwards followed, but it was not. The question came again before this court in *Woodward* v. *Blanchard*, 16 ib. 425, and it was held, that the law of 1839 was, as we have already stated, designed to protect claims to land that would not be reached by the act of 1835, and did not require a *prima facie* title. This construction has since been consistently followed, and this court has held in numerous cases, that color of title under the act of 1839, simply means a deed purporting to convey title, and disclosing nothing which brings home to the person claiming under it, actual bad faith. This has become, under a long train of decisions, one of the most firmly settled rules of property in this State.

It is said, however, by counsel, that *Woodward* v. *Blanchard* did not, expressly, overrule *Irving* v. *Brownell*, so far as that

case related to the act of 1835. This is true, it did not expressly, but it did by implication. The reasoning and decision of the court in *Woodward* v. *Blanchard*, proceed upon the ground that the acts were designed to protect different grades of title; that the law of 1839 was intended to reach cases not within the purview of the act of 1835, and that while mere color of title would be sufficient under the act of 1839, something more would be requisite under the act of 1835.

But counsel for appellees also cite *Collins* v. *Smith*, 18 ib. 160, as sustaining their construction of the statute. We do not so regard it. It will be found, by reference to the statement of facts of that case, that both parties had a regular chain of title from the patentee, the difference being, that one claimed through a deed executed by one Ramsey, in his lifetime, and the other through a deed from the administrator of Ramsey, executed under an order of court. No question was made, as to the sufficiency of the title, but only as to the sufficiency of the proof in regard to a resulting trust. The court merely say, in regard to the title, that an administrator, who has sold land under an order of court, is one of the sources of title enumerated by the statute.

In the present case, the defendants claim under a tax deed of 1842, offered in evidence, without judgment or precept. While this would be color of title, it is nothing more. It is not even a *prima facie* title. In the absence of a judgment and precept, it it no more than would be the deed of any other person, having no title to the land. The act of 1835 protects the possession of land held under a title, derived "from this State, or the United States, or from any public officer, or person authorized by the laws of this State to sell *such* land for the non payment of taxes, or from any sheriff, marshal, or other person authorized to sell *such* land on execution, or under *any* order, judgment or decree of any court of record."

We, certainly, cannot hold that this language refers to *any*

27—46TH ILL.

deed which a sheriff or marshal may chance to make for another's land without pretense of authority. There must be a judgment and precept, or execution. If there was none, the sheriff was not "authorized to sell," and the case is not within the statute. This is in nowise inconsistent with what was said in *Collins* v. *Smith*, above cited, as an administrator, selling under an order of court, would be within the language of the statute, but it would be necessary for him to show the order. So here, if the defendants had shown not merely a tax deed, but also a judgment and precept directing the sale, they would, doubtless, have been within the statute, even though the tax title might not have been good as paramount title.

We deem it unnecessary to devote further time to the discussion of this subject. The counsel for appellees rely upon *Irving* v. *Brownell*, but that case has not been considered as authority even in regard to the act of 1835, since the decision in *Woodward* v. *Blanchard*.

We are left then, to the language of the law, and while in some cases, it might be difficult to decide whether the act applied or not, we simply say, that the present case is, clearly, not within its terms. We do not undertake to lay down a general rule for the construction of this law. Each case as it arises, must be tested by the language of the act. The petition for a re-hearing is denied.

*Re-hearing denied.*